JOHN J. DUFFY, PROSECUTOR, v. MAYOR AND ALDERMEN OF JERSEY CITY ET AL., DEFENDANTS.

Argued November 9, 1910—Decided April 19, 1911.

Where the owner of land adjacent to a public street, in which there is under construction an entrance to a subway railroad for the use of the public, stands by and without protest permits the construction to proceed until a large expense has been incurred, amounting to several thousand dollars, and it appears that the structure is of great public benefit, and its size is not unreasonable for the purpose required, the laches of the applicant for a writ of *certiorari* to review the ordinance, by virtue of which the work is being carried on, is sufficient to justify the refusal of the writ. The allowance of such a writ is discretionary and ought not to be allowed where a private injustice, resulting from the laches of the applicant, will follow its allowance.

---

On rule to show cause.

Before Justices REED, PARKER and BERGEN.

For the prosecutor, *Herrmann & Steelman.*

For the defendants, *Collins & Corbin* and *William D. Edwards.*

The opinion of the court was delivered by

BERGEN, J.  The prosecutor moves to make absolute a rule to show cause why a writ of *certiorari* should not issue to review an ordinance adopted by the mayor and aldermen of Jersey City granting to the defendant the Hudson and Manhattan Railroad Company the right to construct an entrance from the surface of Railroad avenue, in Jersey City, to its underground railway and a superstructure over the same.

The undisputed facts are that in 1837 Cornelius Van Vorst and wife conveyed in fee-simple to the New Jersey Railroad and Transportation Company a strip of land twenty-four feet wide across his entire tract, along each side of which, until the railway track was subsequently elevated, the railway company maintained a close picket fence and used the land for railroad purposes; that by a map filed in the Hudson county clerk's office April 24th, 1847, Van Vorst laid out the tract of land, through which the right of way was conveyed, into streets and lots, a street being dedicated on each side of the strip sold to the railroad company, the street on the south being forty feet wide and that on the north thirty feet wide; the street on the southerly side was named Railroad avenue. The prosecutor is the owner of lands running along the southerly line of Railroad avenue from Grove street westerly, and the proposed structure of the railroad company is being placed on the strip owned by the New Jersey Transportation Company along and partially upon the northerly side of Railroad avenue as laid out in front of the prosecutor's premises.  In 1887 the railroad company made an agreement with the city by the terms of which it was allowed to elevate its tracks and to use a small portion of the northerly side of Railroad avenue, as then owned and used along the prosecutor's premises, for the purpose of building a foundation and posts to support its superstructure.  This encroachment by the railroad com-

pany was consented to by the prosecutor for which he was paid $2,000. What the Hudson and Manhattan company now intends to do, under the ordinance sought to be set aside, is to erect a building under the elevated tracks about twelve feet high to provide an entrance from Grove street to the tunnel of its railroad running under Railroad avenue. The side of the proposed station is substantially on a line with the posts of the railroad company which support its superstructure. It also appears that the opening to the subway, as well as the steps leading to it from the street, and the foundations for the superstructure, were completed when this rule was allowed, and a large sum of money had been expended therefor; that while the posts of the superstructure interfere with a clear view of the prosecutor's premises along Railroad avenue, from Grove street, north of Railroad avenue, the size of the proposed station will completely cut off any view of the lower portion thereof from that point. There is, however, evidence which establishes the fact that the placing of a subway station at this point will be of some benefit to the prosecutor's property. In the agreement between the New Jersey Transportation Company, and the city and as part consideration for permission to elevate its tracks, that company agreed that the *surface* of the ground formerly occupied by its railroad tracks, except so far as it was used for its supporting posts, should be thrown open to public use in connection with the two streets on each side of it. Whether this consent gives the prosecutor any special interest in, or title to, the strip under the railroad different from that which the general public enjoys in the use of the surface of the railroad company's land, or whether his title is, by this consent to a public use, extended beyond the centre line of the street as it existed when his land was conveyed to him, it is not necessary to determine in this cause and no opinion is expressed.

The prosecutor's property is located on the corner of Grove street and Railroad avenue and the opening to the tunnel is on Grove street and nearly in the middle of Railroad avenue. It is not denied that the location is one greatly to the advantage of the public, as it is in a populous and business centre

of Jersey City, and the prosecutor does not dispute this, nor that the locating of a subway station at that point will be of advantage to his property and tend to increase its value. His complaint is against the size of the structure, which is to be eighty-six feet long, thirty-nine feet wide and about twelve feet high, because, as he claims, it will to some extent interfere with a full view of his premises from certain points of observation, but he does not object to an entrance to be covered by a hood. The prosecutor admits that for a long time before the work was commenced he had heard that the station was to be located at that point, but that he never read the ordinance and did not know of the proposed size of the building. What does appear is that he was daily in the neighborhood of the work, it being in front of his plumbing shop, and made no protest until the excavation was completed and the foundation walls laid about even with the surface of the street. He testified as follows: "Q. The foundation was up there then and reinforcing bars were sticking out there, were they not? A. Little iron bars or rods were sticking up about a foot above the foundation of the cement." The ordinance which it is intended to review by this writ was adopted and accepted September 30th, 1910, and the rule to show cause allowed October 22d, 1910, and that during this period, to the prosecutor's knowledge, the Hudson and Manhattan company had made the excavation and substantially finished the foundation ready for the superstructure, at an expenditure of over five thousand dollars, out of an estimated cost of $12,000 for the whole. The size of the excavation must have been known to the prosecutor, for it was in front of his place of business where he attended nearly every day, still he stood by and saw the expenditure of a large amount of money before he took any steps to ascertain the contents of the ordinance or the character of the plans according to which the company was required to construct the station and entrance to the subway railroad.

We think that under the circumstances appearing in this case the laches of the prosecutor warrants the withholding of this discretionary writ.

The ordinance shows that the character of the structure was intended by the city to be sufficient to afford a convenient, comfortable and safe means by which the public might enter and leave the subway. That it was in a reasonably suitable location to serve the public abundantly appears. The only real complaint of the prosecutor is that the superstructure will to some extent intercept a full observation of his stores on Railroad avenue from all points, but he took no steps to ascertain the effect of the work going on under his daily observation until a large sum of money had been expended, the loss of which might have been prevented by prompt action on his part.

To allow this writ, after such laches on the part of the prosecutor, would do a wrong, in his behalf, to the defendant. In the exercise of the discretionary power reposed in the court concerning the allowance of such writs, we are of opinion that the writ should not go, and therefore the writ is refused and the rule to show cause discharged.